THE ATTORNEY GENERAL
AT THE RELATION OF
LARKIN BUCKINGHAM    } MARCH TERM, 1847.
vs.
JANETTE DORSEY.

[PROCEEDING TO AVOID A PATENT FOR ALLEGED FRAUD.]

A WARRANT of resurvey does not authorize a party to include a vacancy not contiguous to the tract or tracts to be resurveyed. And a person who has not a title to the land on which he obtains a warrant of resurvey, does not, in virtue of such warrant, acquire a right of presumption in the adjoining vacancy.

Yet, patents obtained by a party who has no legal title to the original, or upon a certificate of resurvey, including vacancy not contiguous to the original, will not be vacated, except for fraud *in fact*, charged and proved, though upon *caveat* filed in the land office, they would have been refused.

A proceeding against an innocent purchaser, without notice, to set aside a patent forty-seven years after its date, and forty-five after the patentee had sold and conveyed the land to such purchaser, cannot receive the countenance of a court of equity.

[In the year 1795, Samuel Chase, by virtue of a warrant of resurvey, taken out in 1793, on a tract of land then owned by him, called "Mansfield Purchase," took in several vacant parcels, some of which, as appears by these proceedings, were not contiguous to the original tract, and obtained a patent in 1795, by the name of "Chase's Forest." In 1797, he sold a part of this land to William Hobbs, who, by his will, devised the same to defendant. In 1841, the testator, Buckingham, took out a special warrant for Buckingham Place, which was located upon a part of the land, included in the survey. The certificate of survey being duly returned, a caveat was filed against it by the defendant, Dorsey, in 1842, which is still depending. The bill was filed in this case to vacate the patent obtained by Chase, on the ground of fraud, in taking in tracts not contiguous to his own land.]

THE CHANCELLOR:

This is then the case of an information filed in the year 1842, at the relation of a party whose title, whatever it is, commenced in 1841, to vacate a patent of land granted in 1795, which the the patentee in 1797, sold and conveyed for a valuable consideration, to an individual who could not have had notice of the facts upon which the patent is now impeached.

It is certainly true, that a warrant of resurvey does not authorise a party to include vacancy not contiguous to the tract or tracts to be resurveyed—and it is equally well established law of the land office, that a person who has not a title to the land on which he obtains a warrant of resurvey, does not, in virtue of such a warrant, acquire a right of pre-emption in the adjoining vacancy—and yet the cases of *Hammond* vs. *Norris* and *Hammond* vs. *Warfield*, 2 *H. & J.*, 140, 141 and 151, show, that patents obtained from the land office by a party who has no legal title to the original, or upon a certificate of resurvey including vacancy not contiguous to the original, are nevertheless valid and available, unless some intervening right of a third party shall deprive them of their operation.   These cases prove conclusively, that such grants are not void, though obtained irregularly and against the rules of the land office, and the case of *Hammond* vs. *Ridgely*, 5 *H. & J.*, 263, shows that a grant is not void, though the surveyor includes land not within his county, if no fraud is practiced, though upon caveat in the land office the grant would have been refused.

These departures, then, from the rules of the land office, will not void the grant, if the ingredient of fraud is wanting, and it is believed that no case can be found, on which a grant has been vacated except for fraud *in fact*, charged and proved. The cases in 1 *H. & J.*, 332 and 374, are very strong to show that actual fraud is indispensable in an attempt to vacate a grant.   The case of *Hoye* vs. *Johnston*, decided by the Court of Appeals at December term, 1844, was a case of actual fraud upon the rights of a third party, who had previously acquired an interest in the land, and was put expressly upon that ground.

But this is not a proceeding to vacate a patent whilst the

land is held and owned by the patentee, to whom the irregularity and the imputed fraud founded upon that irregularity are attributed, but it is a proceeding against an innocent purchaser, without notice, instituted forty-seven years after the date of the patent, and forty-five years after the patentee had sold and conveyed the land to such innocent third person for a valuable consideration and without notice, and this too by a party who had but recently acquired an interest in the subject of this controversy.

The state of Maryland, in the year 1795, sold and granted this land, first receiving the purchase money from the purchaser, who, in two years afterwards, sold and conveyed it to an innocent and third person, who paid him value; and then, forty-five years afterwards, a party claiming under the state, seeks to avoid the title acquired by this innocent third person.

It seems to the Chancellor, that such an attempt cannot receive the countenance of a court of equity. If parties who purchase lands, are required not only to trace the title back to the patent, but to go behind the patent, and see that the proceedings which led to it are all regular, difficulties of a serious, if not insuperable nature, would exist in the investigation of titles. If in purchasing land taken up under a warrant of resurvey, the purchaser must see at his peril, that no vacancy is included which is not contiguous to the original tract, he would also be bound to see that the party by whom the warrant was taken out, had a sufficient title to the original, to authorize him to sue out such a warrant. It seems to the Chancellor, that the argument *ab inconvenienti* is powerful against such a principle, and nothing but high authority could induce him to adopt it.

For these reasons, he deems it proper to dismiss this proceeding.

[No appeal from the decree in this case.]