# JOHN G. JAY vs. GEORGE L. VAN BIBBER.

*Land Office—Patent for Vacant Land—What Constitutes a Caveat—When Land Commissioner Acts Judicially—Appeal from Commissioner.*

When a patent for land alleged to be vacant has been issued under the great seal in the manner prescribed by statute, and no caveat was previously filed in the Land Office to the issue of such patent, the authority of the Land Commissioner is then at an end and the grantee in the patent is enabled to contend at law for the land thereby conveyed.

A caveat against the issue of a patent need not be in any special form, but it must so describe or identify the tract of land in question as to constitute notice to the Land Commissioner of the particular tract intended to be affected by the caveat, and enable him in consequence of the notice to withhold a patent which would otherwise be granted.

L., who was the attorney for the appellant, wrote in his own capacity a letter to the Land Commissioner saying "I hereby wish to make protest against the issuance of a patent to J. M. M. for land on Swan Creek, Harford Co." *Held*, that this letter cannot be construed as a caveat to the issue of a patent for land on Swan Creek to V. B.

An oral notice to the Land Commissioner not to issue a patent is not a caveat since the Land Office is a Court of record and its proceedings cannot rest in parol.

Code, Art. 54, requires the issue of a patent for land in all cases when the formalities of the law have been complied with and no caveat has been entered, and it is also provided that when there is a dispute concerning the issue of a patent, the Land Commissioner shall hear and determine the question. Code, Art. 5, sec. 79, gives a right of appeal to all parties aggrieved by any judgment of the Land Commissioner. In this case an appeal was taken from the action of the Commissioner in issuing a patent for alleged vacant land when no caveat had been filed against the issue. · *Held*,

1st. That in certifying a patent as proper to be issued in an undisputed case the Commissioner acts ministerially, and that he acts judicially only in determining a disputed case.          ·

2nd. That since no caveat had been entered so as to commence a judicial proceeding, the appellant is not a party entitled to appeal.          .

3rd. That although the evidence in certain cases heretofore in this Court tended to show that the appellant and those under whom he claims had been in possession for more than fifty years of the land covered by the

patent in question, yet that claim was not established in those cases, which were not before the Commissioner, and it will be permissible for the appellant to show in ejectment proceedings that he had such possession of the land as will bar any right under the patent issued in this case.

Appeal from the Commissioner of the Land Office. (E. STANLEY TOADVIN.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES JJ.

*W. Irvine Cross* and *John L. G. Lee*, for the appellant.

*George L. Van Bibber* (with whom was *S. A. Williams* on the brief), for the appellee.

PEARCE, J., delivered the opinion of the Court.

This is an appeal from the action of the Land Commissioner in granting two patents for alleged vacant lands in Harford County. The appellee has moved to dismiss the appeal,

1st. Because no caveat has been entered to the application for either of the two special warrants issued, and to the returns thereof, and the certificates of survey, as is required by sec. 38 of Art. 54 of the Code of Public General Laws.

2nd. Because the record does not show any final order or decree from which an appeal lies.

3rd. Because the record shows no irregularity in any of the proceedings resulting in the issuance of said patents.

4th. Because the appellee has no interest in the contention between the appellant and the Land Commissioner disclosed by the record.

We think this motion must prevail.

Sec. 38 of Art. 54 provides that if a certificate of survey shall be returned within the prescribed time, and shall be found to be correct, and the whole composition or purchase-money has been paid, and such certificate has laid six months in the Land Office, and no caveat has been entered thereto,

the person having such certificate returned, shall be entitled to a patent thereon.

Here, the two warrants were issued April 25th, 1900. Each of the surveys directed by these warrants were made May 10th, 1900, as shown by the certificates, and the certificates were returned October 19th, 1900, within six months from the date of the warrants, On July 23rd, 1901, the composition or purchase-money on each tract was fully paid. On August 24th, 1901, the Land Commissioner certified to the Governor that patents were proper to be issued for each of these tracts, and on August 31st, 1901, the patents were granted by the Governor, the certificates having laid more than six months in the Land Office.

It thus appears that if no caveat was entered, there was no informality or irregularity in the issuance of these patents, which are in themselves *prima facie* evidence that all the incipient steps had been regularly taken before the title was perfected by the patent. *Polk* v. *Wendell*, 9 Cranch, 98; *Minter* v. *Crommelin*, 18 Howard, 88.

When a patent has been legally authenticated by having the great seal affixed to it, there can be no proceedings in the Land Office by caveat to it, the authority of the Land Office being at an end. The legal effect of a patent is to transfer to the party in whose name it issues all the right which the State possessed in the land which it describes, and no more. It does not avail against any prior existing legal title, and is a title so far only as to enable a party to contend at law for the land which it conveys. *Land Holders' Assistant*, 495, 496; *Cunningham* v. *Browning*, 1 Bland, 321.

But if a caveat was entered which has not been heard and determined before the issuance of these patents, the *prima facie* evidence of regularity furnished thereby would be overcome, and it would be necessary to remand the case for a hearing and determination of the caveat. The appellant contends that the letter of Mr. Lee, of May 8th, 1900, to the Land Commissioner was a sufficient and legal caveat. That letter is in these words:

*"Baltimore*, May 8th, 1900.

LAND COMMISSIONER, Annapolis, Md.

*"Dear Sir:* I hereby wish to make protest against the issuance of a patent to Mr. John M. Michael for land on Swan Creek, Harford Co., Md.     Please notify me what, if any, application is made.         Yrs. truly,

JNO. L. G. LEE."

> Land Office of
> Maryland, Annapolis.
> Received May 8th, 1900.

"Answer May 9th, 1900.    No warrant issued to John M. Michael."

In *Cunningham* v. *Browning, supra*, 295, a caveat in the Land Office is said to be "a warning to the Chancellor (now to the Land Commissioner) not to put the great seal to a patent *for a certain tract of land,* as prayed by the holder of a certificate."    There is no prescribed form essential to be used, and the grounds relied on to show that no patent should be issued, may be shown either in the caveat, or at the hearing, but it is obvious, whatever form the caveat may take, that it must so describe or identify the tract of land in question as to constitute notice to the Land Commissioner of what *particular tract* is intended to be affected by the caveat, and to enable him in consequence of such notice, to withhold a patent which would otherwise be granted.    The letter of Mr. Lee contains no such elements of certainty and precision, and affords no such notice.    The protest was against the issuance of a patent to John M. Michael, and to no other man.    There was no attempt to locate or describe the land in any other manner than as "land on Swan Creek in Harford Co., Md."    There was no estimate or statement of area, no name assigned to the land, and no reference to any adjoining owners or tracts.    The Commissioner promptly replied, in legally responsive language. "No warrant issued to John M. Michael."    Had any such been issued, it is a legitimate presumption from the above answer, that the Commissioner would have advised Mr. Lee what

application had been made by *Mr. Michael.*   Mr. Lee's inquiry was plainly limited to information as to application by Mr. Michael, and the Commissioner's answer was fully responsive. He was not supposed to know that the land on Swan Creek affected by Mr. Van Bibber's warrant was the land inquired of by Mr. Lee, and upon no recognized principles either of legal evidence, or of business dealings can that letter be held to constitute a caveat to the issuance of these patents.

Nor is the appellant's case helped by the affidavit of Mr. Jay as to the verbal notice which he claims to have given to the Land Commissioner at his office in May, 1900.   The facts alleged in this affidavit are expressly contradicted by the statement of the Land Commissioner, made and inserted in the record at the express request of the appellant.   The Land Commissioner declares that no caveat or objections were made to the issuing of said patents in writing or orally and that he was not informed and had no cause to believe that John M. Michael was in any way interested in the said patents or certificates.   This statement also embraces a denial by Mr. Shafer, the Chief Clerk of the Land Office, of the correctness of the facts alleged in that affidavit.   This statement in its entirety is admissible against the appellant, having been made and embodied in the record at his request.   But even if not contradicted by the Commissioner's statement, Mr. Jay's affidavit of the verbal notice claimed to have been given could not be received for the purpose for which it was introduced.   The Commissioner of the Land Office is declared to be a Court of record, and its proceedings cannot rest in parol.   It was so held in *Carlysle* v. *Carlysle* 10 Md. 449; and in *Redman* v. *Chance*, 32 Md. 52, where verbal notice to the mother of an infant before appointing a guardian was not allowed to be received in evidence. The record here discloses nothing which can be held to constitute a caveat within the meaning of the law and these patents were therefore regularly issued.

The title passed thereby is a matter for the cognizance of a Court of law or of equity in their usual modes of procedure in suits or questions of title.   *Land Holder's Assistant*, 372.

We do not understand that there is any pretence that any fraud was practised in obtaining these warrants or patents. Had any such fraud been practised, a Court of equity would have been the appropriate forum where full and adequate relief could have been had. *Stallings* v. *Ruby's Lessee*, 27 Md. 156; *Buckingham* v. *Dorsey*, 1 Md. Ch. 31.

But it was contended by the appellant that in issuing these patents the Land Commissioner acted judicially, and rendered a final judgment from which an appeal lies under sec. 79 of Art. 5, giving the right of appeal "to all *parties* aggrieved by any judgment, final order or determination in any case affecting the title to lands, made by the Commissioner of the Land Office;" and for this he relies upon the language of JUDGE LEGRAND in *Cook's Lessee* v. *Carroll*, 6 Md. 112, in which he said: "In the granting of a patent the Chancellor acted judicially and not ministerially." From a careful examination of that case, and of all the provisions of Art. 54 of the Code relating to the Land Office, we are satisfied that JUDGE LE GRAND referred to *the particular patent* issued in *that case*, and intended the language to be applicable only to disputed cases. Sec. 38 of Art. 54, (which is a codification of sec. 2 of the Act of 1782, Ch. 38), and the provisions of which have been referred to in this opinion expressly *requires* the issuing of a patent in all cases where the formalities of the law have been complied with, and no caveat has been entered. How then could a duty be more plainly ministerial in its nature? No other view, as to cases within this section, would be consonant with the essential idea of a ministerial duty, nor in accord with the policy of the law which is designed to promote and secure the occupation of the whole territory of the State, and to supplement the revenues derived from taxation.

But where a caveat has been entered, sec. 39 provides *it shall be heard and determined by the Land Commissioner* within twelve months from date of entry, unless extended for cause. Here is as plainly a judicial duty, viz : To hear and determine.

Again, sec. 4 requires the Commissioner to keep a docket *only in disputed cases* affecting title to land ; and sec. 21 con-

fers upon him power to hear and determine all *disputes* con-
cerning the issuing of patents and to decree *therein* according
to equity and good conscience and the principles established
in Courts of equity. From a consideration of these pro-
visions the conclusion seems almost irresistible that in certify-
ing a patent as proper to be issued in an undisputed case, the
Commissioner acts ministerially, and acts judicially only in
hearing and determining a disputed case. Consistently with
this view, the Chancellor said in *Cunningham* v. *Brown, supra,*
295, "a caveat must be the commencement of a judicial pro-
ceeding on the same side of the Court with that to which it
is opposed, and consequently in all controversies brought be-
fore the Chancellor by caveat, he holds a common law Court
of record." Moreover, it should be observed that the Land
Commissioner does not himself issue the patent. He presents
it, with his certificate that it is proper to issue—to the Gov-
ernor, who is authorized, but not directed, to sign it, and have
the great seal affixed. The Commissioner cannot require ac-
tion by the Governor. His functions and authority cease with
his certificate to the Governor. We have examined into the
practice in the Land Office, and we find that he pronounces
no judgment or determination except in *controversies* brought
before him by caveat, and then his decree either sustains the
caveat and refuses to certify the patent to the Governor, or
overrules the caveat and certifies the patent as proper.

In *Brown* v. *Shilling,* 9 Md. 81, and in *Armstrong* v. *Bittin-
ger,* 47 Md. 110, it was held that the Land Commissioner in
issuing patents does not conclude any question of right, and
in the former case, JUDGE TUCK distinguished the case of
*Cook's Lessee* v. *Carroll* from that before him, saying that the
cases were materially different in the means necessary to ob-
tain an escheat patent (or as in this case a vacancy patent) and
one like that in *Cook* v. *Carroll,* where the party claimed as
assignee of another, who appeared by the records of the
office to be entitled to the land ; and saying also that in *Cook* v.
*Carroll,* "there were full and specific allegations and proof of
the right of the party claiming as assignee of the title, *upon*

*which* it was ordered by the Chancellor that a patent should issue." We feel warranted therefore in holding that the Land Commissioner acts judicially, only in cases brought before him on caveat, or under circumstances analogous to those in *Cook* v. *Carroll*, and that his action is ministerial only, in all cases where there is no caveat and the patent issues as of course under sec. 38 directly to the party named in the certificate.

Moreover, the appeal provided by sec. 79 of Art. 5, is given only to "parties" aggrieved by any final order or determination of the Land Commissioner, and even if his action in certifying these patents as proper to issue were held to be a final order, no third person who had not regularly intervened by entering a caveat and thereby commencing a judicial proceeding as expressed by CHANCELLOR BLAND, could be regarded as a *party* entitled to the right of appeal.

It was still further contended by the appellant that this Court should consider the records and briefs in the three cases between Jay and Michael reported in 82 Md. 1, 91 Md. 75, and 92 Md. 198, relating to the tract of land called "Horner's Fishery;" and that it would appear therefrom that the Jays had held possession of the parcels of land covered by the patent in this case for more than 50 years, and that as this possession would be a bar under sec. 9 of Art. 57 to any right or claim derived from the State under that patent, it could be of no advantage whatever to Van Bibber ; and he cited *Dorothy* v. *Hillert*, 9 Md. 575, where under such circumstances a caveat was sustained, to show that in this case the matter should be decided at once in order, as expressed by JUDGE ALVEY in *Armstrong* v. *Bittinger*, 47 Md. 111, "to destroy the germ of a useless and vexatious litigation." Conceding for present purposes, without deciding, that it is competent for this Court to consider the briefs and records in those cases, which are not in this record, and were not before the Land Commissioner, they do not sustain the position of the appellant in this case. They do show that the Jays' *pretensions* covered all the land between "Horner's Fishery" and Swan Creek,

and there is testimony *tending* to sustain their pretensions, but the claim made in their declaration in ejectment and their recovery was not co-extensive with their pretensions, nor with their claim in this case. The record in *Jay* v. *Michael*, 92 Md. 198, contains the writ of *habere facias* issued out of the Circuit Court for Howard County upon the jugdment in ejectment recovered in that Court by the Jays against Michael, and reported in 91 Md. 75. That writ describes by metes and bounds, courses and distances, the tract so recovered, and the Sheriff's return thereto is accompanied by a plat of the same. The return shows that he put the Jays in possession of the tract so described, and that the marks and bounds were pointed out to him by one of the Jays, and the surveyor employed by him, Wm. T. Clark, who also executed the survey of the land embraced in Van Bibber's patent. The plat in the case referred to in addition to showing the tract recovered by the Jays, shows in dotted lines two small tracts lying between the tract recovered and Swan Creek, and the certificate accompanying this survey states that these two small tracts or parcels had been surveyed by E. B. McLain for Van Bibber ; and by comparing these parcels as they appear on that certificate and plot, with the two parcels surveyed and platted for Van Bibber by Wm. T. Clark in this case it will be seen they correspond exactly in outline and number of courses. So far, therefore from showing that the parcels surveyed in this case for Van Bibber were included in the tract recovered by the Jays, it appears that there was land between Swan Creek and the tract recovered by them, and answering to the description of the two parcels surveyed for Van Bibber in this case. It will be open to them to show in ejectment proceedings that they have had such possession of these parcels as will bar any right under the patent in this case, but such claim is not established by the briefs and records in the cases mentioned.

It follows from what we have said that the appeal must be dismissed.

*Appeal dismissed with costs.*

(Decided March 6th, 1902.)